**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CORRINA ROUSH,**

        **Petitioner,**

        **v.**

**UNITED STATES OF AMERICA,**

        **Respondent.**

        **Civil Case No. 13-CV-00869
Criminal Case No. 2:10-CR-00300
JUDGE ALGENON L. MARBLEY
Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, Corrina Roush, is a federal prisoner currently serving 96 months imprisonment on her conviction on manufacturing through cultivation more than 100 marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii) and 18 U.S.C. § 2, as the result of her negotiated *Plea Agreement*. ECF 63. In a *Judgment* entered on August 20, 2013, the Court imposed a sentence of 96 months incarceration plus four years supervised release pursuant to agreement of the parties. *Id.* Petitioner did not file an appeal.

Petitioner brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 asserting that she was denied effective assistance of counsel at sentencing because her attorney failed to present evidence that her husband, Shane Roush, coerced her participation in the crime at issue, failed to raise an issue regarding her minor role in the offense, and failed to explain sentencing ramifications. Additionally, Petitioner asserts that her sentence violates *Alleyene v. United States*, 133 S.Ct. 2151 (2013), and requests a new sentencing hearing on this basis. *Motion to Vacate Sentence*, ECF 73, PageID# 239.

1

This matter now is before the Court on the instant § 2255 motion, ECF 73, Respondent's *Response in Opposition*, ECF 80, Petitioner's *Traverse,* ECF 83, and the exhibits of the parties.[1] For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 be **DENIED** and that this action be **DISMISSED.**

Petitioner's *Request for Status*, ECF 86, is **DENIED**, as moot.

**Standard of Review**

A prisoner seeking relief under § 2255 "'must allege as a basis of relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact that was so fundamental as to render the entire proceeding invalid.'" *Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallet v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). In order to obtain relief on an alleged constitutional error, the Petitioner must establish by a preponderance of the evidence that such error "had a substantial and injurious effect or influence on the proceedings." *United States v. West*, No. 12-01-RT-(2), 2014 WL 4693706, at *6 (E.D. Ky. Sept. 22, 2014)(citing *Pough,* 442 F.3d at 964; *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)(internal citation omitted). In order to obtain relief on an alleged non-constitutional error, the Petitioner must establish that it constitutes a "fundamental defect" which resulted in "a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *West*, 2014 WL 4693706, at *6 (citing *Pough*, at 964).

---

[1] This Court denied Respondent's request to dismiss the case as barred by the one-year statute of limitations under 28 U.S.C. § 2255(f) and the parties filed supplemental briefing. *Order,* ECF 78.

"'In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Howard v. United States*, 485 F. App'x 125, 128 (6th Cir. 2012) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). A hearing is required unless the "'record conclusively shows that the petitioner is entitled to no relief.'" *Id.* (quoting *Valentine,* 488 F.3d at 333).  In other words, a hearing is not required if "'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statement of fact.'"  *Brown v. United States*, 261 F. App'x 865, 869 (6th Cir. 2008) (quoting *Valentine*, 488 F.3d at 333).

**Merits**

Petitioner asserts the denial of the effective assistance of counsel.  The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984).  When assessing counsels performance under *Strickland,* the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance. . . ." *Burt v. Titlow,* 134 S.Ct. 10, 18 (2013). In determining whether counsel violated a defendant's Sixth Amendment right to effective assistance, the *Strickland* test requires the Court to engage in a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

3

*Strickland,* 466 U.S. at 687.

Petitioner maintains that her attorney was ineffective for failing to obtain a lesser sentence.  In this regard, she complains that her attorney failed to contact Attorney Donald Wick, who apparently represented her on state charges, who could have provided information regarding the abusive nature of Petitioner's relationship with her husband.  *Petition*, ECF 73, PageID# 237.  She complains that her attorney failed to bring to the attention of the Court at sentencing the abusive and controlling nature of her relationship with her husband, co-defendant Shane Roush, and failed to obtain a downward departure from her recommended sentence under the United States Sentencing Guidelines on this basis.  *Id*.  Additionally, Petitioner contends that her attorney failed to explain or provide her with a copy of the sentencing guidelines, or the *PreSentence Investigation Report,* which misstates certain factual details of the crime.  *Traverse*, ECF 83, PageID# 303.

At the time of her hearing at which she pleaded guilty, Petitioner indicated that she had discussed her change of plea with defense counsel, and reviewed all of the counts charged in the *Indictment,* as well as any potential defenses*. Transcript*, ECF 76, PageID# 251.  She confirmed that it had been her decision to plead guilty.   PageID# 251-52.  Under the terms of her *Plea Agreement*, Petitioner admitted to manufacturing, through cultivation, more than 100 marijuana plants.  ECF 30, PageID# 70; Transcript, ECF 76, PageID# 252.  This was a lesser included offense of the *Indictment,* which charged her with manufacturing, through cultivation, more than 1,000 marijuana plants.  ECF 2.  At the hearing, she indicated that she had discussed the maximum penalty she faced with her attorney.  She denied being under the influence of alcohol, narcotics, or prescription medication.  PageID# 253-54.  She understood the nature and meaning

of the charge and had advised her attorney everything she knew about the case. She believed he had been fully advised about the facts and circumstances of the case, and he had advised her on the nature and meaning of the charge and any defenses she might have. Petitioner confirmed that she was satisfied with defense counsel's representation. PageID# 254. In her signed *Plea Agreement* Petitioner indicated that she understood she that faced a mandatory minimum term of five, and maximum of forty years of incarceration. ECF 30, PageID# 70-71. The Court also advised Petitioner at the time of her guilty plea of the elements of the offense charged and of the potential sentencing ramifications. Specifically, the Court advised Petitioner that she faced statutory mandatory minimum term of five and maximum of forty years of incarceration. *Transcript*, ECF 77, PageID# 255. She indicated that she understood the Court. Under penalty of perjury, Petitioner averred that she understood that the Court could impose the maximum penalty or the same penalty as though she had pleaded not guilty, stood trial, and was convicted by a jury. *Id*. She acknowledged that she had discussed with counsel how the advisory sentencing guidelines might apply in her case, and understood her right to appeal. PageID# 257. The Court advised Petitioner of all of the rights she was waiving by entry of her guilty plea. PageID# 257-59. She indicated that she understood. *Id.* The prosecutor summarized the terms of her signed *Plea Agreement,* including the parties' agreement that the applicable relevant conduct for sentencing purposes was more than 1,000 kilograms, but less than 3,000 kilograms of marijuana;[2] that she had accepted responsibility; and had timely notified the authorities of her

---

[2] There seems to be some confusion in the record on this point. The record, however, is clear that Petitioner pleaded guilty to the reduced charge of manufacturing through cultivating more than 100 marijuana plants, *see Plea Agreement*, ECF 30, PageID# 70, and that she would be held accountable for as relevant conduct more than 1,000 kilograms and less than 3,000 kilograms of marijuana. PageID#74. *See also Transcript, Guilty Plea Hearing,* ECF 76, PageID# 259, 262; *PreSentence Investigation Report*, ¶ 45. As explained more fully below, under the Sentencing Guidelines, Petitioner had a Base Offense Level of 26. After enhancements and adjustments

intention to plead guilty. The parties' stipulated to a binding sentence of 96 months imprisonment. PageID# 259-62. Petitioner agreed with the stated terms of the *Plea Agreement*. She denied being made any other promises or assurances that induced her guilty plea.

Agent Adam Klontz summarized the facts of the case as follows:

> On or about October 21st, 2010, a police-officer-involved shooting occurred at 7311 County Road 179, Fredericktown, Ohio, which was the location of the residence of Shane Roush and his wife, Corrina Roush. The shooting occurred shortly after a Morrow County Sheriff's Deputy discovered a marijuana grow operation at the Roush residence. As a result of the shooting, the deputy and Shane Roush both suffered multiple gunshot wounds. Corrina Roush was also present at the time and scene of the incident. After the arrival of multiple law enforcement agencies and securing the scene, a search warrant was obtained and executed at 7311 County Road 179, Fredericktown, Ohio.
>
> Law enforcement officers seized numerous items from the residence, including approximately 103 firearms, over 29,000 rounds of ammunition, and drug paraphernalia. In addition, law enforcement officers determined that there were at least 1,750 marijuana plants located in and around the residence and backyard, approximately half of which were still planted and growing from the ground. Law enforcement officers took a sample of the marijuana as evidence and destroyed the remaining amount.
>
> Following the incident, Corrina Roush was interviewed by detectives from the Knox County Sheriff's Office. After being advised of her constitutional rights, Corrina Roush agreed to speak to the detectives and stated that she and her husband, Shane Roush, had been growing marijuana for approximately eight years. She also stated that she and her husband utilized the proceeds from the sale of marijuana to pay for day-to-day expenses.
>
> This violation occurred in Morrow County, Southern District of Ohio.

---

were applied, the resulting final Offense Level was 37, yielding a sentence under the Guidelines of 210 to 262 months of imprisonment. Despite the fact that she faced over 20 years of imprisonment under the Guidelines, the Court accepted the parties' negotiated sentence of just 8 years.

PageID# 264-65.  Petitioner agreed with the truth of these facts.  The transcript reflect that it was her desire to enter a guilty plea, which she did at that time.  PageID# 266.

The *PreSentence Investigation Report* contains details regarding the coercive and abusive nature of Petitioner's relationship with her husband and co-defendant, Shane Roush.  The Report indicates that defense counsel advised the probation officer that Petitioner acted under orders from Shane Roush and feared that if she did not comply with his orders he would become violent against her and their children.  Shane Roush regularly threatened Petitioner and their children throughout their relationship.  *PreSentence Investigation Report,* ¶ 40.  Petitioner indicated she had been married to Shane Roush nearly twenty years and had suffered years of domestic abuse.  She had never been hospitalized, but her husband abused her in front of her children.  The abuse resulted in black eyes, and he would grab her neck, scream at her, poke her, and call her names.  She became submissive to him as a result.  She reported that she was always and remained in fear of Shane Roush.  She attempted to leave him on occasion but returned in fear that he would take the children.  *PreSentence Investigation Report*, ¶ 64.  Shane Roush physically abused their children. ¶ 65.  Petitioner's parents corroborated Petitioner's account of physical abuse beginning at the start of the marriage.  At times she left her husband, but always returned.  ¶ 68.  Petitioner's daughter also corroborated the abusive nature of her parents's relationship.  ¶ 72.  The *PreSentence Investigation Report* additionally indicated:

> It is apparent, Ms. Roush suffered countless years of physical and mental abuse at the hands of her husband.  While this does not negate her culpability in the offense, the Court may wish to consider the abuse as one factor which led to her providing the weapon and ballistic vest at the direction of her husband. . . It also appears, Ms. Roush may suffer from an undiagnosed anxiety disorder and possibly other mental health concerns because of the ongoing abuse.

¶ 119.  The Report indicated that Petitioner faced a sentence under the Guidelines of 210-262 months imprisonment.  Nonetheless, pursuant to the terms of her *Plea Agreement*, the Probation Officer recommended a sentence of 96 months.

The transcript of Petitioner's sentencing hearing likewise refutes Petitioner's allegations here.  At that time, Petitioner acknowledged that she had received a copy of the *PreSentence Investigation Report* at least ten days prior to the hearing.  She did not dispute any of the factual statements contained therein.  *Transcript*, *Sentencing Hearing*, ECF 77, PageID# 271-72.  Petitioner told the Court that her husband abused the family and had threatened her parents and made death threats.  She had tried to leave him, but he threatened to take the children.  PageID# 273-74.

Contrary to Petitioner's allegation here, the record reflects that defense counsel presented mitigating circumstances and argued vigorously for a reduced sentence.  Indeed, the record reflects that Petitioner faced a statutory maximum penalty of 40 years of imprisonment and that under the Guidelines, the recommended sentence calculated at over 20 years in jail.  Yet, the *Defendant's Sentencing Memorandum* indicates that the parties, after extensive discussion, had agreed to a sentence of 8 years.  This agreed sentence took into account the serious nature of the charges and damage caused.  Defense counsel argued that, although Petitioner did not play a minor role in the offense, she was not the leader of the conspiracy and acted at the direction of her soon to be ex-husband.  She had done what she could to change the direction of her life, after serving one year incarceration, including obtaining and maintaining legitimate employment at two separate jobs, consistently testing clean for controlled substances and complying with the terms of her pre-trial release, indicating that she is capable of rehabilitation.  She had been estranged from her parents and lived almost her entire adult life under the thumb of her husband

and co-defendant subject to ongoing emotional, psychological and physical abuse, in constant fear of harm for herself and her children. She had engaged in mental health and substance abuse counseling, and filed for divorce. She recognized the wrongfulness of her actions. *Defendant's Sentencing Memorandum*, ECF 59, PageID# 157-59.

At sentencing, counsel indicated, "I don't know that I've ever represented somebody where the serious nature of the offense and tangential consequences are so divergent from the nature of the defendant." PageID# 274-75.

> I'm wholly confident that this incident, this occurrence, this prosecution, has been a breaking point for Ms. Roush. . . . It's allowed her to move away from what was obviously a destructive situation. For all of those reasons, we are asking the Court to adopt the recommendation of the parties in the joint plea agreement.
>
> We've spoken off the record. We believe there are extraordinary circumstances in this case[.]

ECF 77, PageID# 275. When asked if she had any statements to make, Petitioner apologized for the suffering her husband had caused and to the Court for her involvement in the case. She thanked the Court for permitting her to be with her family prior to beginning her prison sentence. She apologized to her children and to her parents. PageID# 275-76. She did not want to pursue an appeal. PageID# 281.

The record simply fails to support Petitioner's claim that her attorney performed in a constitutionally deficient manner or that she was prejudiced thereby as required under *Strickland*. The record similarly contradicts her claim that defense counsel failed to present the Court with mitigating information regarding the abusive and coercive nature of her relationship with her husband. *See Return of Writ*, ECF 80, PageID# 295. The record contains no indication that Attorney Donald Wick could have provided any mitigating information not already before the

9

Court. The record flatly contradicts her claim that defense counsel failed to consult with her regarding her recommended sentence or the contents of the *PreSentence Investigation Report* or that she claimed any factual errors therein. She did not indicate at any time that she was dissatisfied with her attorney or objected to the terms of her the sentence. The statements Petitioner made under oath and at the time of her guilty plea and sentencing hearing carry a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

> [T]he representations of the defendant, his [or her] lawyer, and the prosecutor at [a guilty plea proceeding], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–75 (1977). Such are the circumstances here.

As a result of her guilty plea, the government agreed not to pursue any additional charges against her. Respondent notes Petitioner faced the potential of being charged for a violation of 18 U.S.C. ¶ 924(c) and exposure to a ten year mandatory term of incarceration based on facts indicating she provided Shane Roush with the weapon he used to shoot and injure Detective Moore. *Return of Writ*, ECF 80, PageID# 296.[3] Petitioner obtained a two-level reduction in the

---

[3] 18 U.S.C. 924(c)(1)(A) provides

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

recommended sentence under the Guidelines for acceptance of responsibility and a one-level reduction for timely notifying the authorities of her intent to plead guilty. *PreSentence Investigation Report*, ¶¶ 53, 54. The record does not reflect that defense counsel could have obtained any further reduction of her sentence based on grounds of her minor role in the offense. To the extent that defense counsel had not already argued for a reduced sentence in view of Petitioner's role in the offense, the apparent strategic decision not to raise a formal objection to a four-level increase in Petitioner's recommended guideline sentence based on her role in the offense was not unreasonable. *See PreSentence Investigation Report,* ¶¶ 49, 50. Nor can Petitioner establish that she was prejudiced thereby. The record contains no indication that the government would have been unable to prove the charges against her. To the contrary, the record reflects overwhelming evidence of guilt based on her participation in extremely dangerous activity, which resulted in the injury of a police officer from multiple gunshot wounds. Significantly, under these circumstances, and by entry of her guilty plea, defense counsel obtained for Petitioner a sentence far below that of her recommended sentence under the United States Sentencing Guidelines. Nothing in the record supports Petitioner's claim that any further action of defense counsel could have obtained a sentence lower than that imposed.

Petitioner's claim that her sentence violates *Alleyne v. United States*, 133 S.Ct. 2151 (2013), likewise fails to provide her a basis for relief. In *Alleyne*, the Supreme Court overruled its previous decision in *Harris v. United States*, 536 U.S. 545, and held that any facts that

---

(i)     be sentenced to a term of imprisonment of not less than 5 years;

(ii)     (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii)     iif the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

increase a sentence beyond the mandatory minimum for the offense charged must be submitted to the jury and found beyond a reasonable doubt.  *See In re Mazzio*, 756 F.3d 487, 489 (6th Cir. 2014)(citing *Alleyne*, 133 S.Ct. 2151, 2155).  In this case, Petitioner argues that the government should have been required to prove her accountability for 175 kilograms of marijuana.  *See PreSentence Investigation Report*, § 45.

However, the Supreme Court's decision in *Alleyne* does not retroactively apply to cases on collateral review, and therefore does not apply to this case.  *In re Mazzio*, 756 F.3d at 489:

> "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). Even assuming that *Alleyne* announced a new rule, we cannot identify any Supreme Court decision that makes *Alleyne* 's ruling retroactively applicable to cases on collateral review, nor does any language in *Alleyne* suggest that the Supreme Court was making the new rule it announced retroactively applicable to cases on collateral review.  Therefore, any new rule announced in *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court.

*Id.* (footnotes omitted).

Further, *Alleyne* does not apply because Petitioner agreed, pursuant to the terms of her *Plea Agreement*, that her relevant conduct would be calculated at more than 1,000, but less than 3,000 kilograms of marijuana.  *Plea Agreement*, ECF 30, PageID# 74; *Transcript, Guilty Plea Hearing*, ECF 76, PageID# 262.  She admitted to the facts used to calculate this drug quantity. *See United States v. Martinez*, No. 1:1063-JDB/egb; 1:07-10123-JDB-1, 2014 WL 1330518, at *24 (W.D. Tenn. March 31, 2014)(citing *United States v. Yancy*, 725 F.3d 596, 599 (6th Cir. 2013) ("Because *Alleyne* did not involve the effect of a defendant's admission of the facts necessary for an aggravated crime, it leaves undisturbed our cases deeming such admissions fatal to *Apprendi* claims. These cases recognize that, when a defendant knowingly admits the facts

necessary for a sentence enhancement in the context of a plea, simultaneously waiving his Sixth Amendment right to a jury trial, no *Apprendi* problem arises.") (internal citations omitted)).

**Recommended Disposition**

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be **DENIED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge